# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | | |
|---|---|---|
| DAVID LEAPARD and IMF FINANCE SA, on their own behalf and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | **SUMMONS** |
| v. | ) ) | |
| ALLEN T.Y. CHAN, DAVID J. HORSLEY, KAI KIT POON, BANC OF AMERICA SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, SINO-FOREST CORPORATION, ERNST & YOUNG GLOBAL LIMITED, and ERNST & YOUNG LLP, | ) ) ) ) ) ) | **INDEX NO.** |
| Defendants. | ) ) ) | |

To the above named Defendants:

**YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiffs' attorneys a Verified Answer to the Verified Complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York, unless otherwise stipulated to or agreed upon. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Trial is desired in the County of New York.

The basis of venue designated above is that Defendants maintain and/or conduct their business in the County of New York.

**Dated**: January 27, 2012

Kenneth M. Rehns
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, Fourteenth Floor
New York, New York 10005
Tel: (212) 838-7797

*Attorneys for Plaintiffs*

# SERVE

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** New York

------------------------------------------------------------X

DAVID LEAPARD and IMF FINANCE SA, on their
own behalf and on behalf of all others similarly
situated,

Plaintiff/Petitioner,

- against -

Index No. 650258/2012

ALLEN T.Y. CHAN, DAVID J. HORSLEY, KAI KIT POON, BANC OF
AMERICA SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC,
SINO-FOREST CORPORATION, ERNST & YOUNG GLOBAL LIMITED,
ERNST & YOUNG LLP

Defendant/Respondent.

------------------------------------------------------------X

# NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated: 1-31-2012

_____ (Signature)

Kenneth M. Rehns
_____ (Name)

Cohen Milstein Sellers & Toll PLLC
_____ (Firm Name)

88 Pine Street, 14th Floor _____ (Address)

New York, New York, 10005

(212) 838-7797 _____ (Phone)

krehns@cohenmilstein.com (E-Mail)

To:     See Attached Rider

4/8/11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | | |
|---|---|---|
| DAVID LEAPARD and IMF FINANCE SA, on their own behalf and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | **SUMMONS** |
| v. | ) ) | |
| ALLEN T.Y. CHAN, DAVID J. HORSLEY, KAI KIT POON, BANC OF AMERICA SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, SINO-FOREST CORPORATION, ERNST & YOUNG GLOBAL LIMITED, and ERNST & YOUNG LLP, | ) ) ) ) ) ) | INDEX NO. |
| Defendants. | ) ) ) ) | |

To the above named Defendants:

**YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiffs' attorneys a Verified Answer to the Verified Complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York, unless otherwise stipulated to or agreed upon. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Trial is desired in the County of New York.

The basis of venue designated above is that Defendants maintain and/or conduct their business in the County of New York.

**Dated**: January 27, 2012

Kenneth M. Rehns
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, Fourteenth Floor
New York, New York 10005
Tel: (212) 838-7797

*Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF New York
-------------------------------------------------------------x

DAVID LEAPARD and IMF FINANCE SA, on their
own behalf and on behalf of all others similarly
situated,

Plaintiff/Petitioner,

- against -

Index No. 650258/2012

ALLEN T.Y. CHAN, DAVID J. HORSLEY, KAI KIT POON, BANC OF
AMERICA SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC,
SINO-FOREST CORPORATION, ERNST & YOUNG GLOBAL LIMITED,
ERNST & YOUNG LLP

Defendant/Respondent.
-------------------------------------------------------------x

# NOTICE OF COMMENCEMENT OF ACTION
# SUBJECT TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated: 1-31-2012

| | |
|---|---|
| (Signature) | 88 Pine Street, 14th Floor (Address) |
| Kenneth M. Rehns (Name) | New York, New York, 10005 |
| Cohen Milstein Sellers & Toll PLLC (Firm Name) | (212) 838-7797 (Phone) |
| | krehns@cohenmilstein.com (E-Mail) |

To:    See Attached Rider

**NOTICE**
*(recommended by the Fourteenth Session of*
*Hague Conference of October, 1980)*

**identité et adresse du destinataire**
*identity and address of the addressee*

Received
FEB 2 9 2012
by Elizabeth Wolfe
at 10:40am.

---

**ERNST & YOUNG LLP**
Ernst & Young Tower
222 Bay Street
Toronto, Ontario M5K 1J7
CANADA
**-OR-**
wherever Defendant may be found in Canada

---

**TRÈS IMPORTANT**

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS.  LES "ELÉMENTS ESSENTIELS DE L'ACTE" VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET.  IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT.  IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES :

Legal Services for New York City
350 Broadway, 6th Floor
New York, New York 10013
U.S.A.
Tel. 1.212.431.7200

**IMPORTANT**

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS.  THE "SUMMARY OF THE DOCUMENT TO BE SERVED" WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE.  YOU SHOULD, HOWEVER, READ THE DOCUMENT ITSELF CAREFULLY.  IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

Legal Services for New York City
350 Broadway, 6th Floor
New York, New York 10013
U.S.A.
Tel. 1.212.431.7200

# SUMMARY OF THE DOCUMENT TO BE SERVED
## *ELEMENTS ESSENTIELS DE L'ACTE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires et extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 Novembre 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa 4)*

| | |
|---|---|
| Name and address of the requesting authority: | Karina Shreefer, Esq. |
| *Nom et adresse de l'autorité requérante :* | LEGAL LANGUAGE SERVICES |
| | 8014 State Line Road, Suite 110, Leawood, Kansas 66208, U.S.A. |
| | Tel. 1.913.341.3167 |

**Particulars of the parties*:**
*Identité des parties :*   DAVID LEAPARD and IMF FINANCE SA on their own behalf and on behalf of all others similarly situated, *Plaintiffs*
ALLEN T.Y. CHAN, DAVID J. HORSLEY, KAI KIT POON, BANC OF AMERICA SECURITIES LLC, CREDIT SUISSE, SECURITIES (USA) LLC, SINO-FOREST CORPORATION, ERNST & YOUNG GLOBAL LIMITED, and **ERNST & YOUNG LLP**, *Defendants*

## JUDICIAL DOCUMENT**
### *ACTE JUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte :*   To give notice to the Defendant of the commencement of a civil claim against it and to summon it to answer or otherwise respond.

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas échéant, le montant du litige :*   A civil action has been commenced against the Defendant.

**Date and place for entering appearance**:**
*Date et lieu de la comparution :*   Within thirty (30) days after service of the summons, exclusive of the day of service before the Clerk of the Supreme Court of the State of New York, County of New York located at: 60 Centre Street, New York, New York 10007, U.S.A.

**Court which has given judgment**:**
*Juridiction qui a rendu la décision :*   N/A

**Date of judgment**:**
*Date de la décision :*   N/A

**Time limits stated in the document**:**
*Indication des délais figurant dans l'acte :*   Defendant is summoned and required to serve upon Plaintiff's Attorneys (Cohen Milstein Sellers & Toll PLLC) a Verified Answer to the Verified Complaint within thirty (30) days after service of the summons, exclusive of the day of service. In case of Defendant's failure to Answer, judgment will be taken against it by default for the relief demanded in the Complaint.

## EXTRAJUDICIAL DOCUMENT**
### *ACTE EXTRAJUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte :*   N/A

**Time limits stated in the document**:**
*Indication des délais figurant dans l'acte :*   N/A

---

\*   If appropriate, identity and address of the person interested in the transmission of the document.
   *S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte.*                    ★U.S. Government Printing Office: 1990-262-211/15302
\*\*  Delete if inappropriate.
   *Rayer les mentions inutiles.*                    **3**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| DAVID LEAPARD and IMF FINANCE SA, on their own behalf and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ALLEN T.Y. CHAN, DAVID J. HORSLEY, KAI KIT POON, BANC OF AMERICA SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, SINO-FOREST CORPORATION, ERNST & YOUNG GLOBAL LIMITED, and ERNST & YOUNG LLP, )<br><br>Defendants. ) | **SUMMONS**<br><br>INDEX NO. |

To the above named Defendants:

**YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiffs' attorneys a Verified Answer to the Verified Complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York, unless otherwise stipulated to or agreed upon. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Trial is desired in the County of New York.

The basis of venue designated above is that Defendants maintain and/or conduct their business in the County of New York.

**Dated**: January 27, 2012

Kenneth M. Rehns
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, Fourteenth Floor
New York, New York 10005
Tel: (212) 838-7797

*Attorneys for Plaintiffs*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** New York

————————————————————————x

DAVID LEAPARD and IMF FINANCE SA, on their
own behalf and on behalf of all others similarly
situated,

                         Plaintiff/Petitioner,

               - against -                                Index No. 650258/2012

ALLEN T.Y. CHAN, DAVID J. HORSLEY, KAI KIT POON, BANC OF
AMERICA SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC,
SINO-FOREST CORPORATION, ERNST & YOUNG GLOBAL LIMITED,
ERNST & YOUNG LLP

                         Defendant/Respondent.

————————————————————————x

# NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

      PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

      The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

      Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated: 1-31-2012

|  |  |
|---|---|
| Kenneth M. Rehns _(Signature)_ | 88 Pine Street, 14th Floor _(Address)_ |
| _(Name)_ | New York, New York, 10005 |
| Cohen Milstein Sellers & Toll PLLC _(Firm Name)_ | (212) 838-7797 _(Phone)_ |
| | krehns@cohenmilstein.com _(E-Mail)_ |

To:   See Attached Rider

## RIDER TO NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING

### Leapard v. Chan, Index No. 650258/2012
### Supreme Court of the State of New York

### Addresses of Defendants

Allen T.Y. Chan
c/o Corporate Administration Office
Sino-Forest Corporation
90 Burnhamthorpe Road West
Suite 1208
Mississauga, Ontario L5B 3C3
Canada

David J. Horsley
c/o Corporate Administration Office
Sino-Forest Corporation
90 Burnhamthorpe Road West
Suite 1208
Mississauga, Ontario L5B 3C3
Canada

Kai Kit Poon
c/o Corporate Administration Office
Sino-Forest Corporation
90 Burnhamthorpe Road West
Suite 1208
Mississauga, Ontario L5B 3C3
Canada

Banc of America Securities LLC
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Credit Suisse Securities (USA) LLC
Corporation Service Company
80 State Street
Albany, New York, 12207-2543

Sino-Forest Corporation
Corporate Administration Office
90 Burnhamthorpe Road West
Suite 1208
Mississauga, Ontario L5B 3C3
Canada

Ernst & Young LLP
Ernst & Young Tower
222 Bay Street
Toronto, Ontario M5K 1J7
Canada

Ernst & Young Global Limited
c/o
Ernst & Young LLP
Ernst & Young Tower
222 Bay Street
Toronto, Ontario M5K 1J7
Canada

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| DAVID LEAPARD and IMF FINANCE SA on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLEN T.Y. CHAN, DAVID J. HORSLEY, KAI KIT POON, BANC OF AMERICA SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, SINO-FOREST CORPORATION, ERNST & YOUNG GLOBAL LIMITED, and ERNST & YOUNG LLP,<br><br>Defendants. | INDEX NO.<br><br>**VERIFIED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     PARTIES ............................................................................................................. 6
    A.   Plaintiffs ........................................................................................................ 6
    B.   Defendants .................................................................................................... 6
    C.   Jurisdiction and Venue ................................................................................ 10

III.    BACKGROUND ................................................................................................ 11

IV.   FALSE AND MISLEADING STATEMENTS ................................................ 15
    A.   Misrepresentations and Omissions With Respect to Sino-Forest's Financial
        Statements .................................................................................................... 15
    B.   Other Misrepresentations and Omissions In Annual And Quarterly Filings ................... 17
    C.   False Certifications ...................................................................................... 19
    D.   Misrepresentations and Omissions Relating To Yunnan Forestry Assets ..................... 21
    E.   Misrepresentations and Omissions Relating to the Offering of 2017 Notes ................... 22
    F.   Misrepresentations and Omissions Relating to Code of Business Conduct ................... 24

V.      INITIAL DISCLOSURE OF FRAUD AT SINO-FOREST ........................................ 24

VI.    SINO-FOREST'S DENIALS AND FURTHER MISLEADING STATEMENTS .... 27

VII.   CONFIRMATION OF THE FRAUD ................................................................ 29
    A.   *The Globe and Mail* Investigation ......................................................... 29
    B.   Investigations and Regulatory Actions ...................................................... 32

VIII. MOTIVATION FOR FRAUD ........................................................................... 33

IX.    CLASS ALLEGATIONS .................................................................................. 34

X.      APPLICATION OF THE FRAUD ON THE MARKET PRESUMPTION ............... 36
    A.   Common Stock ............................................................................................ 37
    B.   2017 Notes and Other Debt Securities ...................................................... 37

XI.    CAUSES OF ACTION ...................................................................................... 38

XII.   PRAYER FOR RELIEF AND JURY DEMAND ............................................. 46

Plaintiffs, David Leapard and IMF Finance SA, on behalf of themselves and all others similarly situated (the "Class" or "Class Members"), allege the following upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters. Plaintiffs' information and belief is based on the investigation of counsel including, inter alia, review and analysis of (i) government and regulatory documents relating to Defendant Sino-Forest Corporation ("Sino-Forest" or the "Company"); (ii) press releases, Company filings and other public statements by Sino-Forest; (iii) reports of securities analysts; and (iv) other publicly available materials. Many of the facts related to Plaintiffs' allegations are known only to Defendants or are exclusively within their custody or control. Plaintiffs believe that substantial additional evidentiary support for the allegations set forth below will be developed after reasonable opportunity for discovery.

## I.      INTRODUCTION

1.      Plaintiffs bring this class action on behalf of (i) all persons or entities who, from March 19, 2007 through August 26, 2011 (the "Class Period") purchased the common stock of Sino-Forest on the Over-the-Counter ("OTC") market and who were damaged thereby; and (ii) all persons or entities who, during the Class Period, purchased debt securities issued by Sino-Forest other than in Canada and who were damaged thereby.

2.      Sino-Forest is a Canadian company engaged in the commercial forest plantation business whose principal operations are in the People's Republic of China ("PRC" or "China"). Among Sino-Forest's businesses are the ownership and management of forest plantation trees, sales of standing timber and wood logs, and the manufacture of related wood products. Substantially all of the Company's sales for 2008, 2009 and 2010 were supposedly generated in the PRC. The Company maintains offices in Toronto, Hong Kong and the PRC. Its common

1

stock is registered in Canada and trades on the  Toronto Stock Exchange, and also trades in the United States on the OTC m arket.  Sino-forest's  debt securities are also trad ed in the open market.

3.      Sino-Forest  portrayed itself  as  one of the world's la  rgest  and m ost  successful forestry companies.  According to the Com pany's Annual Information Form for the year ended December 31, 2010 (the "2010 Annual Form") Sino-Forest "had approximately 788,700 hectares of forest plantations under m  anagement  which  are  located  primarily  in  southern and eastern China."  Between 2006 and 2010, Sino-Forest's assets (primarily plantation acreage) purportedly grew nearly five-fold from approximately $1.2  billion to over $5.7 billion , while revenues grew from $555 million to $1.9 billion and net inco me more than tripled from $113 million to $395 million  as r eflected  in the Com  pany's  financial  statements.[1]  From  2007 through 2010, the Company's financial statements were audited by Defendant Ernst & Yo ung LLP which certified they had been prepared in acco rdance with Canadian Generally Accepted Accounting Principles ("Canadian  GAAP") and that th  e audit had been conducted in    conformance  with Canadian Generally Accepted Auditing Standards ("Canadian GAAS").

4.      Sino-Forest's  tremendous  growth was os  tensibly  fueled by increasingly large acquisitions of valuable tree p lantations and revenues generated from operations re lating to that business.  In addition, the Com  pany's escalating growth allowed it to raise enorm  ous sums of capital from investors around the world through   the sale of debt securities and common stock, including  the sale of $600 m    illion  in no tes  which  occurred  in October 2010 (the "Note Offering") that will co me due in 2017 (the " 2017 Notes"). The Note Offering was underwritten

---

[1] Except where otherwise indicated, all amounts in this Complaint are in U.S. dollars.

by Defendants Banc of America Securities LLC and Credit Suisse Securities (USA) LLC. In total, the Company issued **over $1.8 billion** in debt instruments during the Class Period.

5.     However, in stark contrast to the investing public's perception of an enormously successful forestry business in the fast growing PRC market, Sino-Forest was, in fact, materially misleading both investors and regulators. Sino-Forest's assets, revenues and income were all materially overstated. In addition, the Company's financial statements and other disclosures were materially misleading because they failed to disclose that many of Sino-Forest's significant business transactions were with unknown or related parties.     Further, Sino-Forest had misrepresented and failed to disclose the true terms of certain agreements it had entered into in the PRC for the acquisition of plantation acreage, vastly overstating the amount of timber it had acquired during the Class Period. In many instances, no documentation or inadequate documentation existed to support Sino-Forest's timber holdings and related assets and the valuations attributed to those properties on Sino-Forest's financial statements. Sino-Forest failed to disclose that the Company lacked adequate internal controls to substantiate its financial performance or verify its assets and contractual relationships; that its operations were permeated by unsubstantiated and undisclosed related party transactions; and that its financial statements were misleading and not prepared in accordance with the applicable accounting standards.

6.     Information regarding Sino-Forest's fraud first came to light on June 2, 2011, when Muddy Waters, a firm that specializes in analyzing Chinese companies whose stock trades in the U.S. and Canada, published a detailed report alleging improper and illegal conduct at the Company. Over the ensuing weeks, there was a     flurry of articles, investigations, and news reports about the Company's misconduct, as well as denials by the Company of the allegations published by Muddy Waters. On June 18, 2011, *The Globe and Mail* reported on its own

investigation regarding some of the allegations against Sino-Forest, finding that there were "doubts about the company's public statements regarding the value of [its] assets" and "broader questions about its business practices."

7.     Ultimately, in late August 2011, the Ontario Stock Commission ("OSC") confirmed that there was evidence of fraud at Sino-Forest and ordered a halt in trading of Sino-Forest's common stock on the Toronto Stock Exchange, effective August 26th. Reportedly, the OSC accused Sino-Forest of "fraudulently inflating its revenues and exaggerating the extent of its timber holdings." The OSC also noted that the Company had "engaged in significant non-arms-length transactions." Similarly, trading of Sino-Forest common stock was halted in the U.S. on the OTC Bulletin Board. Two days later it was reported that the Company's CEO, Defendant Chan, had resigned; that three of the Company's vice-presidents were placed on leave; and that another senior vice-president was relieved of most of his duties. Sino-Forest has since not filed any required periodic reports or issued financial statements for the third quarter of 2011. On November 11, 2011, the Company announced that it was also the subject of a criminal investigation by the Royal Canadian Mounted Police with respect to the allegations surrounding its business and finances. Sino-Forest has failed to make the most recent payments due on its outstanding debt, been forced to seek waivers of default from its debt holders and has now belatedly advised the investing public that its historical financial statements and audit reports should not be relied upon.

8.     The disclosures relating to Defendants' misconduct caused the trading prices of the Company's stock and its debt securities to decline dramatically, thereby damaging Class Members. Sino-Forest's common stock, which traded as high as $26.64, last traded at $1.38

before trading was halted in the U.S.  Moreover, Sino-Forest's debt securities are now priced at a fraction of their original value.

9.     The Individual Defendants earned millions of dollars in compensation because of Sino-Forest's artificially inflated stock price.  Moreover, their m isleading portrayal of the Company's finances allowed Sino-Forest to raise  billions of dollars by issuing debt and equity securities to investors.  This was cr itical to the Company's survival since the Company had a negative cash flow -- it was sp ending more money than it was ta king in -- yet was spending enormous sums purportedly to purchase new assets  .  Sino-Forest's inflated stock price also allowed it to use its shares as currency to acquire other companies and assets.

10.     It was only  because of Defendants' conceal ment of Sino-Forest's true financial condition that the Company was able to com plete the $60 0 million Note Offering in October 2010.  Investors would not have pu rchased these notes or would not  have purchased them at the prices they did, if the truth about Sino-Forest had been known.

11.     Thus, during the Class Period, Defendants,   acting in concert with others, m ade materially false statements and misleading statements and omitted material facts about the true financial condition and business op erations of Sino-Forest, causing  the prices of Sino-Forest's common stock and Debt Securities to be artific    ially inflated during the Class Period. W    ith respect to the claim s asserted against the Ba   nc of Am erica  Securities LLC, Credit Suis   se Securities (USA) LLC, Ernst & Young Global     Limited,  and Ernst & Young LLP, which are based on negligence, negligent misrepresentation, gross negligence and breach of fiduciary duty , Plaintiffs specifically disclaim any allegations of fraud or fraudulent intent.

## II.   PARTIES

### A.   Plaintiffs

12.   Plaintiff **David Leapard** is a resident of South Carolina and purchased the common stock of Sino-Forest during the Class Pe riod in the OTC market and suffered da mages when the price of those shares declined as a result of Defendants' misconduct.

13.   Plaintiff **IMF Finance SA ("IMF")** is an entity with offices in the British Virgin Islands and purchased 2017 Note s pursuant to the October 2010 Note Offering and suffered damages when the price of the 2017 Notes dec lined as a result of Defendants' m isconduct. Plaintiff IMF asserts claim s on be half of purch asers of Sino-Forest de bt securities including purchasers of the 2017 Notes.

### B.   Defendants

14.   Defendant **Sino-Forest** purports to be a com mercial forest plantation operator, principally in the PRC but with ad ditional operations in other locations. At all m aterial times, Sino-Forest had its registered office located in Mississauga, Ontario and its common stock traded on the OTC m arket in the United States using th e symbol "SNOFF." As a reporting issuer in Ontario, Canada, Sino-Forest was required to file certain periodic reports regarding its business and operations, including audited financial statem ents, which were m ade available to investors. Sino-Forest's common stock and various debt instrum ents are traded in Canada, the United States and elsewhere.

15.   Sino-Forest derives substantial revenue from interstate or international commerce.

16.   Defendant **Allen T. Y. Chan** is a co-founder of Si no-Forest and was the Chairman, Chief Executive Officer and a d irector of the Com pany from 1994 until his recent resignation in the wake of the disclosure of th e misconduct described in this Complaint. As

Sino-Forest's CEO, Chan certified the accuracy of the Company's securities filings, including its financial statements, during the Class Period.   Chan signed each of the Com pany's Annual Consolidated Financial Statements issued from 2006 through 2010.  Chan is  a resident of Hong Kong and, on information and belief, is a citizen of the PRC.

17.     During  the  Class Period, Chan received     substantial  compensation  from  the Company.  For exam ple, for 2008 to 2010, Chan's   total com pensation was, respectively, $5.0 million, $7.6 million, and $9.3 million.  In addition, during the Class Period, while in possession of material adverse inform ation regarding the bu siness and finances of  Sino-Forest, Chan sold nearly $3 million worth of Sino-Forest common stock to unsuspecting investors.

18.     As of May 1, 1995, shortly after Sino-Forest became a reporting issuer, Chan held 18.3% of Sino-Forest's outstanding  common shares and 37.5% of its   preference shares.  As of April 29, 2011, he held 2.7% of Sino-Forest's common shares.

19.     Defendant **David  J.  Horsley** has been Sino-Forest's   Chief  Financial  Officer ("CFO"), since October 2005.  In his position as Sino-Forest's CFO, Horsley was responsible for the Company's accounting, internal controls and financial reporting, including the preparation of the  Company's  financial s tatements.  Hors ley  signed  and certified the   Company's  disclosure documents during the Class Period.  Horsley resides in Ontario.

20.     During  the Class Perio d,  Horsley receive d substantial compensation from  Sino-Forest.  For 2008 to 2010, Horsley  's total compensation was, respectiv ely, $1.7 m illion, $2.5 million,  and  $3.1 m illion.  During the Clas  s  Period,  while  in possession of m aterial  adverse information  concerning the business and finances    of Sino-Forest, Horsley sold alm  ost  $11 million worth of shares of Sino-Forrest common stock.

21.     Defendant **Kai Kit Poon** is a co-founder of Sino-Forest, a member of its Board of Directors and has been President of the Com pany since 1994.  Poon resides in Hong Kong and, on information and belief, is a citizen of the PR C.  During the Class Period, while in possession of material adverse information concerning the business and finances of Sino-Forrest, Poon sold almost $30 million worth of shares of Sino-Forest common stock.

22.     Defendants Chan, Horsley and Poon are collectively referred to as the **Individual Defendants**.  The Individual Defendants and Sino-Forest are collectively referred to as **the Sino-Forest Defendants.**

23.     Defendant **Banc of America Securities LLC ("BOA")** is a financial services company  which, using the nam  e "BofA  Merrill L ynch,"  acted a s  one  of two "Joint Globa l Coordinators and Lead Bookrunning Managers" for the Offering.  In this capacity, BOA acted as an underwriter for the Offering.  BOA operates in  and has its principal place of busin ess in New York County, New York.  Defenda nt BOA and De fendant Credit Suisse Securities (USA) LLC are collectively referred to as the **Underwriter Defendants**.  This Complaint seeks dam ages on behalf of the purchasers of the 2017 Notes against any and all Bank of America entities that may be liable for the misconduct described herein.

24.     Defendant **Credit Suisse Securities (USA) LLC ("Credit Suisse")** is a financial services company which acted as one of two "J oint Global Coordinators and Lead Bookrunning Managers" for the Note Offering.  In this capacit y, Credit Suisse acted as an underwriter for this offering.  Credit Suisse operates in and has     offices  in New York Co unty, New York.  This Complaint  seeks dam ages  on behalf of the pur  chasers  of the 2017 Notes against any and all Credit Suisse entities that may be liable for the misconduct described herein.

25.     BOA and Credit Suisse are collectively referred to as the **Underwriter Defendants**.  The Underwriter Defendants who are located in New York, NY, offered and sold the 2017 Notes pursuant to a materially false and misleading Offering Memorandum dated October 14, 2010 (the "Offering Memorandum") to certain Class Members in the United States who purportedly satisfied the requirements to be considered a "qualified institutional buyer" pursuant to Rule 144 of the U.S. Securities and Exchange Commission ("SEC").  The Underwriter Defendants also sold certain notes in the offering to foreign investors relying on the exemption set forth in SEC Regulation S.

26.     Defendant **Ernst & Young Global Limited** is a UK private company limited by guarantee which operates world wide and which, through affiliated entities, provides audit, accounting and other services.  Defendant **Ernst & Young LLP**, a part of Ernst & Young Global Limited , has offices in Toronto, Canada, has been Sino-Forest's auditor since August 13, 2007 and was also Sino-Forest's auditor from 2000 to 2004.  This Complaint seeks damages against any and all Ernst & Young entities that may be liable for the misconduct described herein.

27.     Ernst & Young Global Limited and Ernst & Young LLP are collectively referred to as "**E&Y**" or as "**the E&Y Defendants**."  E&Y does business in New York.

28.     For Sino-Forest's 2007 through 2010 fiscal years, E&Y provided an "Auditor's Report" addressed directly to Sino-Forest's shareholders, which gave the Company a "clean" audit opinion on its financial statements.  At all material times, E&Y knew that its audit opinion was directed to Sino-Forest's shareholders, prospective shareholders and prospective purchasers of Sino-forest's securities, and that investors would and did rely on E&Y's statements relating to Sino-Forest in making their investment decisions.  E&Y's opinion informed the Company's investors and the purchasers of its securities that, based on its audit, Sino-Forest's financial

statements were presented in accordance with Canadian GAAP and th at it had perform ed its audit in accordance with applic able auditing standards. E &Y's audit opinion was m aterially false and misleading and was reck lessly or negligently issued to investors, inc luding Plaintiffs and Class Members.

29.     The Individual Defendants, as the most senior officers of Sino-Forest, are liable to Plaintiffs and the Class because th ey knew of , directed and participated in th e misconduct described in this Complain t and also assiste d and conspired with others involved in the misconduct. Sino-Forest is liable for the m isconduct of its employees and agents. F urthermore, the representations made in the f inancial statements and in the Of fering Memorandum were materially inaccurate and inconsis tent with th e truth such that th eir falsity would have been discovered with minimal due diligence. Nevertheless, despite the obviously false and misleading nature of these s tatements, E&Y and the Un derwriter Defendants recklessly or negligently facilitated the im proper conduct of Sino-Fore st and the Individual Defendants; E&Y by certifying the Company's financial statem ents; and the Underwriter D efendants by failing to perform adequate due dilig ence and disseminating the m isleading Offering Memorandum to investors.

### C.     **Jurisdiction and Venue**

30.     The Court possesses jurisdiction over this action pursuant to NYCPLR §§ 301 and 302(a).

31.     This court has jurisdiction, and venue is proper because, in connection with the Note Offering, Sino-Forest "… irrevocably an d unconditionally subm its to the non-exclusive jurisdiction of any Ne w York State or United States Federal court sitting in the Borough of Manhattan, New York City over any suit, action or proceeding arising out of or re lating to this

Indenture, any Note or any Subsidiary Guarantee." In addition, the Indenture provides that "[a]s long as an y of the Notes rem ain Outstanding, the Company and each of the Subsidiary Guarantors will at all tim es have a n authorized agent in N ew York City, upon whom process may be served in any legal action o r proceeding arising out of or relating to this Indenture, any Note or any Subsidiary Guarantee." Finally, as contemplated by the Inde nture, "[e]ach of the Notes, the Subsidiary Guarantees and the I ndenture shall be governed by, and c onstrued in accordance with, the laws of the State of New York."

32.     In addition, the Underwriter Defendant s are located in New York and all Defendants do substantial busine ss in New York. All Defendant s participated in c ertain transactions and activities in New York relating to the Note Offering. Also, purchases and sales of Sino-Forest common stock occurred on the OTC market in the United States, including New York. Moreover, the trustee for the 2017 Notes is the Law Debenture T rust Company of New York which is located at 400 Madison Avenue, Suite 4D, New York, New York 10017.

## III.   **BACKGROUND**

33.     Although ostensibly a forestry company, Sino-Forest's purported business was, in many respects, m ore that of a trader or finan cial intermediary than of a trad itional forestry company. The Company seldom sold wood products to end-user customers. Instead, it claimed that most of its earnings cam e from buying logs and buying the ri ght to harvest trees and then reselling these logs and rights to harvest trees at higher prices.

34.     Sino-Forest's corporate stru cture is a com plex web of dozens of interconnected Canadian, Chinese, Hong Kong, Cayman Islands and British Virgin Islands subsidiaries, most of which are wholly-owned or in which the Company has a majority interest. Sino-Forest's most

recently released corporate organizational chart, attached as Exhibit A, illustrates in part, the complexity.

35.     One specific example of this complexity is Sino-Forest's relationship with one of its most important subsidiaries, Greenheart Group Ltd. ("Greenheart"). Sino-Forest's 64 percent interest in Greenheart was acquired using shares of Company stock. Greenheart trades on the Hong Kong Stock Exchange. Greenheart controls most of Sino-Forest's supposedly substantial forestry assets outside of China. But, Sino-Forest also holds a 39.6 percent stake in Greenheart Resources Holdings Ltd. ("GRH"), a subsidiary of Greenheart. GRH, in turn, indirectly owns 100 percent of Greenheart's forest assets and operations in the western part of Suriname, supposedly one of Sino-Forest's principal timber holdings.

36.     Sino-Forest's business model is further complicated by the fact that much of its business is done through what it describes as "Authorized Intermediaries" ("AIs"), supposedly independent companies which are largely responsible for the actual sale of forestry products to the users of these products. Despite the critical role that these Authorized Intermediaries play in its business, little is known of the financial relationships with these AIs and Sino-Forest has, with one exception, refused to disclose the identity of these companies.

37.     Because Sino-Forest principally operates in China, Sino-Forest's convoluted structure and business practices did not initially arouse investor suspicions. Because of the unusual aspects of doing business in China, which tightly regulates foreign investment, a number of legitimate foreign companies who operate in that country have unusually complex structures. But, unbeknownst to investors, there was little or no business justification for the way Sino-Forest structured itself and its operations. Sino-Forest's structure was not meant to facilitate

compliance with Chin ese law, bu t to make it eas ier for Defendants to m aterially mislead investors about the Company's, operations, revenue, earnings and assets.

38.     Investors were furthe r assured of the le gitimacy of Sino-Forest's finances and operations because of annually issu ed clean audit opinions from E&Y and by the due diligen ce purportedly conducted by BOA and Credit Suisse in  connection with the Com pany's offering of the 2017 Notes.

39.     The purported steady and impressive growth of Sino-Forest helped fuel a series of capital raising activities by the Company.  By making the Company appear to be on a much more economically sound footing than was actually the case, Sino-Forest was able to raise the funds it needed to finance its rapid expansion.  Because     the Com pany's cash flow did no  t cover its operating expenses, the Com pany would not have been able to continue to operate absent cash infusions from debt and equity investors.

40.     During  the Class Period, Sino-Forest     conducted  numerous  debt and equity offerings, issuing over $1.8 billion in debt securities to investors and also sold investors hundreds of millions of dollars of common stock.  Spe cifically, the  following securities were issued to investors:

- On July 17, 2008, the Com  pany closed an  offering of convert ible guaranteed senior notes (the "2013 C onvertible Notes") for gr oss proceeds of $300,000,000. On  August 6, 2008, the Com   pany  issued an additional $45,000,000 of 2013 Convertible Notes pursuant to  the exercise of an over-a llotment option granted to the underwriters in connection with the o ffering, increasing the gross proceeds to $345,000,000.

- On June 24, 2009, the Company offered to eligible holders of outstanding Senior Notes due in 2011 (the "2011 Senior Notes") to exchange these notes for up to $300,000,000 of new guaranteed senior notes due 2014 (the "2014 Senior Notes"). On July 27, 2009, the Company completed this exchange offer, issuing an aggregate principal amount of $212,330,000 of 2014 Senior Notes, representing approximately 70.8% of the aggregate principal amount of the 2011 Senior Notes.

- In June 2009, the Company completed a public offering and international private placement of 34,500,000 common shares (including 4,500,000 common shares issued upon the exercise of the underwriters' over-allotment option) for gross proceeds of approximately $339,810,000.

- On December 17, 2009, the Company closed an offering of convertible guaranteed senior notes (the "2016 Convertible Notes") for gross proceeds of $460,000,000.

- In December 2009, the Company completed a public offering of 21,850,000 common shares (including an overallotment exercise) for gross proceeds of approximately $345,318,000.

- In May 2010, Sino-Forest issued 1,990,566 shares of common stock as a $33.3 million payment to acquire 34% of Greenheart Resources.

- In August 2010, the Company issued $2.3 million shares of common stock in partial payment of its acquisition of Mandra Forestry Holdings Limited, a company which supposedly owned the rights to technology relevant to the Company's business. In connection with this acquisition of Mandra, the

14

Company also exchanged nearly $195 million of Mandra notes for Sino-Forest notes—the Sino-Forest notes had a longer duration and lower interest rate than the Mandra notes for which they were exchanged.

- On October 21, 2010, the Company completed the $600,000,000 Note Offering of the 2017 Notes.

41.     Thus, during the Class Period, while Defendants were issuing materially false and misleading financial statements and other reports to investors, Sino-Forest was taking advantage of the illusory growth portrayed to investors through these large debt and equity offerings, which in less than three years, cumulatively totaled over $2.5 billion.

## IV.     FALSE AND MISLEADING STATEMENTS

42.     During the Class Period, Defendants made numerous statements that were materially false and misleading and which had the effect of artificially inflating the value of Sino-Forest's securities.  These false statements were contained in the Company's public filings, press releases, reports and other statements to the investing public.  In general, during the Class Period, the Company reported steadily increasing holdings of timber assets (mostly in the PRC) achieved through acquisitions and purchases, and increasing revenues and earnings, all of which contributed to the Company's rising stock price and its ability to issue additional debt and equity securities to investors.

### A.     Misrepresentations and Omissions With Respect to Sino-Forest's Financial Statements

43.     Sino-Forest's financial statements, which it published to investors on a quarterly and annual basis via press releases and public filings, consistently portrayed Sino-Forest as a profitable and rapidly expanding company.  As set forth in       Sino-Forest's 2006 Annual

Consolidated Financial Statem ents, dated March 19, 2007; its 2007    Annual Consolidated

Financial Statements dated March 18, 2008; its 2008 Annual Consolidated Financial Statem ents

dated March 16, 2009; its 2009 A nnual Consolidated Financial Statem ents dated March 16,

2010; and its 2010 Annual Consolidated Fina    ncial Statements dated March 15, 2011, the

Company's revenue, earnings and assets supposedly grew during the Class Period as follows:

| | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|
| **Assets** | $1,207,255,000 | $1,837,497,000 | $2,603,924,000 | $3,963,899,000 | $5,729,033,000 |
| **Revenue** | $555,480,000 | $713,866,000 | $896,045,000 | $1,238,185,000 | $1,923,536,000 |
| **Net Income** | $113,480,000 | $152,273,000 | $228,593,000 | $286,370,000 | $395,426,000 |

44.    Each of the annual financial statem  ts, except for the 2006 statem  ents, were

accompanied by an audit opinion from E&Y stating that E&Y had con ducted annual audits in

accordance with Canadian GAAS and that these financial statem      ents were presented in

accordance with Canadian GAAP. Defendant Chan signed each annual financial statement.

45.    The Company also iss ued materially false and m isleading unaudited "Interi m

Financial Statements," during the Class Period, which incorporated prior period audited financial

statements and sim ilarly overstated the Company's revenue, earnings and assets. The

Company's materially false and misleading quarterly financial statements (through 2010) which,

like the an nual financial s tatements, showed in creasing revenue, earnings and assets, were

released on the following dates:

| Document | Date of Filing |
|---|---|
| 2007 Q-1 Interim Financial Statements | 5/14/2007 |
| 2007 Q-2 Interim Financial Statements | 8/13/2007 |
| 2007 Q-3 Interim Financial Statements | 11/12/2007 |
| 2008 Q-1 Interim Financial Statements | 5/13/2008 |
| 2008 Q-2 Interim Financial Statements | 8/12/2008 |
| 2008 Q-3 Interim Financial Statements | 11/13/2008 |

| Document | Date of Filing |
|---|---|
| 2009 Q-1 Interim Financial Statements | 5/11/2009 |
| 2009 Q-2 Interim Financial Statements | 8/10/2009 |
| 2009 Q-3 Interim Financial Statements | 11/12/2009 |
| 2010 Q-1 Interim Financial Statements | 5/12/2010 |
| 2010 Q-2 Interim Financial Statements | 8/10/2010 |
| 2010 Q-3 Interim Financial Statements | 11/10/2010 |

46.     Sino-Forest's quarterly and annual fina ncial statements (through December 31, 2010) were materially false and misleading because they failed to comply with Canadian GAAP. Specifically, at the tim e each of these financial statem ents was issued, they overstated the Company's assets, inflated the reported revenue and earnings and misled investors regarding the Company's then cu rrent financial situation and its future prospects. Because, among other things, the Company lacked adequate internal controls to substantiate its financial perform ance, and its operations were permeated by unsubstantiated and undisclosed related party transactions, these financial statem ents were not prepared in accordance with the applicable accountin g standards. Sino-Forest's quarterly f inancial statements for the first two quarters of fiscal year 2011 also overstated the Com pany's assets, revenues and net earnings at the tim e they were issued and were not presented in accordance with the applicable Canadian accounting standards.

**B.      Other Misrepresentations and Omissions In Annual And Quarterly Filings**

47.     In addition to filing false and m isleading financial statements, the Company also made numerous other false and m isleading statements to investors in o ther periodic securities filings made pursuant to Canadian disclosure regulations. During the Class Period, the Sino-Forest Defendants repeatedly m ade statements in Sino-Forest's periodic f ilings that falsely and misleadingly described the Company as a fast-growing, legitimate business which followed good corporate governance practices.

48.     The  Company's  periodic reports to i    nvestors  included (in addition to the separately filed financial statem ents) a "Management Discussion and Analysis" ("MD&A") that Sino-Forest filed each quarter durin g the Cla ss Period, "Annual Information Form  s" ("AIFs") and  annual reports.  These docum    ents  provided  narrative  explanations of the Com    pany's business,  operations and financial perform  ance  for  the specific period, and of the Com    pany's financial  condition and future pr  ospects.  Canadian law sp  ecifically  requires  that the MD&A discuss important trends and risks that have affected the Company and that are reasonably likely to affect it in future.  The dates of these false    and misleading statements are set ou t in the table below.

| Document | Date of Filing |
|---|---|
| 2006 MD&A | 3/19/2007 |
| 2006 AIF | 3/30/2007 |
| 2006 Annual Report | 5/4/2007 |
| 2007 Q-1 MD&A | 5/14/2007 |
| 2007 Q-2 MD&A | 8/13/2007 |
| 2007 Q-3 MD&A | 11/12/2007 |
| 2007 MD&A | 3/18/2008 |
| 2007 AIF | 3/28/2008 |
| 2007 Annual Report | 5/6/2008 |
| 2008 Q-1 MD&A | 5/13/2008 |
| 2008 Q-2 MD&A | 8/12/2008 |
| 2008 Q-3 MD&A | 11/13/2008 |
| 2008 MD&A | 3/16/2009 |
| 2008 AIF | 3/31/2009 |
| 2008 Annual Report | 5/4/2009 |
| 2009 Q-1 MD&A | 5/11/2009 |
| 2009 Q-2 MD&A | 8/10/2009 |
| 2009 Q-3 MD&A | 11/12/2009 |
| 2009 MD&A | 3/16/2010 |

| Document | Date of Filing |
|---|---|
| 2009 AIF | 3/31/2010 |
| 2009 Annual Report | 5/11/2010 |
| 2010 Q-1 MD&A | 5/12/2010 |
| 2010 Q-2 MD&A | 8/10/2010 |
| 2010 Q-3 MD&A | 11/10/2010 |
| 2010 MD&A | 3/15/2011 |
| 2010 AIF | 3/31/2011 |
| 2010 Annual Report | 5/10/2011 |

49.     Thus, beginning at least as early as March 19, 2007, the Company's MD&A and annual filings were materially false and misleading with respect to the Company's operations and financial performance because they described the Company as a fast-growing, legitimate business which followed good corporate governance practices, while failing to disclose that the Company lacked adequate internal controls to substantiate its financial performance or verify its assets and contractual business relationships, that its operations were permeated by unsubstantiated and undisclosed related party transactions and that the Company's actual financial condition and future prospects were much worse than these public statements indicated.

**C.    False Certifications**

50.     Each annual financial statement, AIF and MD&A filing was accompanied by separate certifications signed by Chan and Horsley which asserted the following:

> 1. Review: I have reviewed the AIF, if any, annual financial statements and annual MD&A, including, for greater certainty, all documents and information that are incorporated by reference in the AIF (together, the "annual filings") of Sino-Forest Corporation (the "issuer") for the financial year ended December 31…
>
> 2. No misrepresentations: Based on my knowledge, having exercised reasonable diligence, the annual filings do not contain any untrue statement of a material fact or omit to state a material fact required to be stated or that is necessary to make a statement

not misleading in light of the ci rcumstances under which it was made, for the period covered by the annual filings.

3. Fair presentation: Based on my knowledge, having exercised reasonable diligence, the annual financial s tatements together with the other financial information included in the annual filings fairly present in all m aterial respects the financial condition, results of operations and cash flows of the issuer, as of the date of and for the periods presented in the annual filings.

51.     Similarly, each of the quarterly interi m financial statem ents and quarterly MD&As were accompanied by separate certificatio ns signed by Chan and Horsley which also asserted the following:

1. Review: I have reviewed the interim financial report and interim MD&A (together, the "interim filings") of Sino-Forest Corporation (the "issuer") for the interim period ended….

2. No m isrepresentations: Based on m y knowledge, having exercised reasonable diligence, th e interim filings do not contain any untrue statement of a m aterial fact or omit to state a m aterial fact required to be stated or that is necessary to make a statement not misleading in light of the ci rcumstances under which it was made, with respect to the period covered by the interim filings.

3. Fair presentation: Based on my knowledge, having exercised reasonable diligence, the interim financial report together with the other financial information included in the interim filings fairly present in all m aterial respects the financial condition, financial performance and cash flows of the i ssuer, as of the date of and for the periods presented in the interim filings.

52.     However, these publicly filed certifications were materially false and misleading because the Company's quarterly and annual financial statements overstated its assets, revenu es and earnings, and th e narrative statem ents were materially false an d misleading. These statements failed to disc lose that the Company lacked adequate internal controls to substantiate its financial perform ance or verify its assets and contractual business relationships, that the Company and its operations were perm eated by unsubstantiated and undisclosed related party

transactions, and that the document being certified contained materially false and misleading information which materially overstated the Company's current financial situation and its future prospects.

**D.     Misrepresentations and Omissions Relating To Yunnan Forestry Assets**

53.     On March 23, 2007 Sino-Forest issued a press release announcing that it had entered into an agreement to sell 26 million shares to several institutional investors for gross proceeds of $200 million and that the proceeds would be used for the acquisition of standing timber including, pursuant to a new agreement, the purchase of standing timber in China's Yunnan Province. The press release further stated that Sino-Forest-Panel (Asia) Inc. ("Sino-Forest-Panel"), a wholly-owned subsidiary of Sino-Forest, had entered into (on that same day) an agreement with Gengma Dai and Wa Tribes Autonomous Region Forestry Company Ltd., ("Gengma Forestry") in Lincang City, Yunnan Province in the PRC. Under that Agreement, Sino-Forest-Panel would acquire approximately 200,000 hectares of non-state owned commercial standing timber in Lincang City and surrounding cities in Yunnan for $700 million to $1.4 billion over a 10-year period.

54.     Similar representations regarding the acquisition of these assets were also made in Sino-Forest's Q1 2007 MD&A. Moreover, throughout the Class Period, Sino-Forest discussed its purported Yunnan acquisitions in other filings and public statements. In the Company's 2010 AIF, filed on March 31, 2010, the Company asserted that "[a]s of December 31, 2010, we have acquired approximately 190,300 hectares of plantation trees for US$925.9 million under the terms of the master agreement" which had been entered into in March 2007. It made a similar statement in its 2010 annual report, which was filed on May 10, 2011.

55.     However, as subsequently disclosed, Si no-Forest's and Defendants' statem ents concerning the acquisition of assets in Yunnan Pr ovince were m aterially false and m isleading because, among other reasons, S ino-Forest had acqui red the rights to  far less timber than  the Company had claimed and/or th e value attributed to the timb er assets purportedly owned by Sino-Forest was materially overstated.  As a result, the Company's representations relating to its financial results and business were materially misleading as Defendants fa iled to disclose the true amount of timber acquired from Gengma Forestry, thereby overstating the assets carried on the balance sheet.

### E.     Misrepresentations and Omissions Relating to the Offering of 2017 Notes

56.     On October 14, 2010, Sino-Fore st, through the Underwriter Defendants, offere d and sold the 2017 Notes.  The Underwriter Defenda nts served as Joint Global Coordinators and Lead Bookrunning Managers.  The 2017 Notes were  purportedly exempt from registration under the  U.S. Securities Act because th  ey were of fered,  pursuant to SEC Rule 144A, to qualified institutional buyers (including thos e in the U.S.), and in offshore  transactions to investors other than U.S. persons under SEC Regulation S.

57.     The  2017 Notes were sold pursuant to the Offering Mem  orandum, which was materially false and misleading as described be low, and which was prepared by the Sino-Forest Defendants  and the Underwriter Defendants.      The Offering Mem      orandum  specifically incorporates  by reference Sino-Forest's     misleading  2007, 2008 and 2009 annual financial statements, its unaudited interim financial statements for the six months ended June 30, 2009 and June 30, 2010, and Defendant E&Y's audit reports dated March 13, 2009 and March 16, 2010 (with E&Y's consent).  The Offering Mem  orandum states that the do cuments incorporated b y reference "form [an] integral part of [the] Offering Memorandum."